Ekwan E. Rhow - State Bar No. 174604
erhow@birdmarella.com
Marc E. Masters - State Bar No. 208375
mmasters@birdmarella.com
Monique M. Candiff - State Bar No. 340315
mcandifff@birdmarella.com
BIRD, MARELLA, RHOW,
LINCENBERG, DROOKS & NESSIM, LLP
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendant STIIIZY Inc.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

A.G., B.R., and R.M., on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

STIIIZY INC.,

Defendant.

CASE NO. 2:26-cv-05089-SRM-SK

**DEFENDANT STIIIZY INC.'S NOTICE OF MOTION AND MOTION TO DISMISS, OR ALTERNATIVELY TO STRIKE PORTIONS OF, THE COMPLAINT**

*[Filed Concurrently with Declaration of Marc E. Masters and [Proposed] Order]*

Date: October 28, 2026
Time: 1:30 p.m.
Crtrm.: 5D

Assigned to Hon. Serena R. Murillo

Complaint Filed: May 12, 2026

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on October 28, 2026, at 1:30 p.m. or as soon thereafter as this matter may be heard in the above-entitled court, before the Honorable Serena R. Murrillo, in Courtroom 5D located at 350 W 1st Street, Los Angeles, CA, 90012, Defendant STIIIZY Inc. will, and hereby does, move for an order dismissing without leave to amend all claims in the Complaint filed by Plaintiffs A.G., B.R., and R.M., or alternatively striking portions of those claims, pursuant to Fed. R. Civ. P. 12 (including 12(b)(6) and 12(f)), 9(b) & 8(a). This motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the concurrently-filed Declaration of Marc E. Masters and Proposed Order, and all papers and pleadings on file in this action.

The conference of counsel required under Local Rule 7-3 took place on July 24, 2026 and lasted approximately 34 minutes. The parties were unable to reach a resolution concerning the issues raised in this Motion. *See* Declaration of Marc E. Masters.

DATED: August 3, 2026

Ekwan E. Rhow
Marc E. Masters
Monique M. Candiff
Bird, Marella, Rhow, Lincenberg, Drooks & Nessim, LLP

By: */s/ Marc E. Masters*
Marc E. Masters
Attorneys for Defendant STIIIZY Inc.

# TABLE OF CONTENTS

Page


I. INTRODUCTION .......... 1

II. THE CORE ALLEGATIONS OF THE COMPLAINT .......... 1

A. STIIIZY's Alleged Use of Trackers to Collect and Share Data .......... 1

B. The Privacy Policy Disclosures .......... 2

1. The 2023 Privacy Policy .......... 2

2. The 2025 Privacy Policy .......... 2

C. The Alleged Falsity of the Privacy Policy Disclosures .......... 2

D. The Plaintiff-Specific Allegations .......... 3

1. Plaintiff AG .......... 3

2. Plaintiff BR .......... 3

3. Plaintiff RM .......... 3

III. DEFICIENCIES IN THE CORE ALLEGATIONS .......... 4

A. The Privacy Policies Are Even More Robust Than Portrayed .......... 4

1. The 2023 Privacy Policy's Additional Disclosures .......... 4

2. The 2025 Privacy Policy's Additional Disclosures .......... 5

3. The Disclosures are not "Buried" or "Vague" .......... 6

B. The 2019 Privacy Policy is Irrelevant .......... 6

C. Plaintiffs' Continued Website Use and Non-withdrawal of Consent .......... 7

D. Plaintiffs Have Not Alleged Medical Information is at Issue .......... 7

IV. ARGUMENT .......... 7

A. Plaintiffs Consented to the Alleged Conduct .......... 7

1. Consent by Review/Acceptance of Privacy Policies .......... 7

2. Consent by Continued Use After Discovery .......... 8

B. The Relevant Statutes of Limitations Bar Many Claims Here .......... 8

1. Plaintiff RM Cannot Bring his Two CIPA Claims .......... 8

2. Plaintiffs AG and BR Cannot Bring Various Claims .......... 9

3. Plaintiffs Cannot Rely on Fraud-Based Delayed Discovery ...... 10

C. Plaintiffs Fail to Plead With Particularity and Plausibility ...... 10

D. There Are Additional Flaws in Each Claim ...... 13

1. Breach of Confidence ...... 13

2. Breach of Express Contract ...... 14

3. Breach of Implied Contract ...... 15

4. Unjust Enrichment ...... 16

5. CIPA § 631 ...... 16

6. CIPA § 632 ...... 18

7. Intrusion ...... 19

8. Publication of Private Facts ...... 20

9. ECPA ...... 21

E. Punitive Damages ...... 22

V. CONCLUSION ...... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 11

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) .......... 16

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) .......... 9

*Campbell v. Facebook, Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) .......... 19

*In re Century Aluminum Co. Sec. Litig.*,
729 F.3d 1104 (9th Cir. 2013) .......... 11

*De Los Reyes v. Ruchman & Assocs., Inc.*,
2014 WL 4354238 (N.D. Cal. Sept. 2, 2014) .......... 10

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) .......... 16

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) .......... 18

*Doe v. Talkiatry Mgmt. Servs., LLC*,
816 F. Supp. 3d 1206 (C.D. Cal. 2026) .......... 22

*Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*,
122 F.3d 1211 (9th Cir. 1997) .......... 13, 14

*In re Facebook, Inc. Internet Tracking Litigation*,
956 F.3d 589 (9th Cir. 2020) .......... 14, 17, 19, 21

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797 (2005) .......... 9, 10

*Fudge v. Delta Air Lines, Inc.*, 753 F. Supp. 3d 987 (C.D. Cal. 2024) .... 14

*In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147 (N.D. Cal. 2021) .... 14

*Hammerling v. Google LLC*, 615 F. Supp. 3d 1069 (N.D. Cal. 2022) .... 14, 20

*Heiting v. Taro Pharms. USA, Inc.*, 728 F. Supp. 3d 1112 (C.D. Cal. 2024) .... 18

*Knuttel v. Omaze, Inc.*, 2022 WL 1843138 (C.D. Cal. Feb. 22, 2022) .... 16

*Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047 (N.D. Cal. 2025) .... 8, 22

*Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010 (N.D. Cal. 2012) .... 15, 20

*Markels v. AARP*, 689 F. Supp. 3d 722 (N.D. Cal. 2023) .... 16

*Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833 (S.D. Cal. 2024) .... 20

*NBCUniversal Media, LLC v. Superior Ct.*, 225 Cal. App. 4th 1222 (2014) .... 9

*Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072 (W.D. Wash. 2024) .... 21

*QuickLogic Corp. v. Konda Techs., Inc.*, 618 F. Supp. 3d 873 (N.D. Cal. 2022) .... 13, 14

*Revitch v. New Moosejaw, LLC*, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .... 19

*Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104 (S.D. Cal. 2024) .... 17

*Rodriguez v. Google LLC*, 2021 WL 2026726 (N.D. Cal. May 21, 2021) .... 22

*Shulman v. Grp. W Prods., Inc.*,
18 Cal. 4th 200 (1998) .......... 20

*Sisti v. Bosley, Inc.*,
2026 WL 1223927 (C.D. Cal. Apr. 27, 2026) .......... 8

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) .......... 8

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) .......... 19

*Thomasson v. GC Servs. Ltd. P'ship*,
321 F. App'x 557 (9th Cir. 2008) .......... 18

*Turner v. Nuance Commc'ns, Inc.*,
735 F. Supp. 3d 1169 (N.D. Cal. 2024) .......... 18

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) .......... 11

*Wiley v. Universal Music Grp., Inc.*,
826 F. Supp. 3d 1121 (N.D. Cal. 2025) .......... 14

*In re Yahoo Mail Litig*,
7 F.Supp.3d 1016 (N.D. Cal. 2014) .......... 8

*Zepeda v. PayPal, Inc.*,
777 F. Supp. 2d 1215 (N.D. Cal. 2011) .......... 16

*In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*,
2025 WL 2684021 (C.D. Cal. Aug. 15, 2025) .......... 11

**Statutes**

18 U.S.C. §§ 2511(1)(a), (c), (d) & 2510(1), (4), (12) & 2511(2)(d) .......... 21

18 U.S.C. § 2511(2)(d) .......... 21, 22

18 U.S.C. § 2520(e) .......... 9

Cal. Civ. Code § 1621 .......... 16

Cal. Civ. Proc. Code § 339(1) .......... 9

Cal. Civ. Proc. Code § 340 .......... 9

Cal. Pen. Code § 631 .......... 9, 16

Cal. Pen. Code § 631(a) .......... 16, 17

Cal. Pen. Code §§ 631(a), 632(a) .......... 17

Cal. Pen. Code § 632 .......... 9, 18

Cal. Pen. Code §§ 632(a)-(c) .......... 18

Cal. Pen. Code § 632(b) .......... 18

Cal. Pen. Code § 632(c) .......... 19

**Other Authorities**

Fed. R. Civ. P. 12 .......... 1, 22

Fed. R. Civ. Pro. 8(a) .......... 11, 18, 19

Fed. R. Civ. Pro. 9(b) .......... 1, 10

## I. INTRODUCTION

This Complaint, alleging STIIIZY unlawfully collected and shared Plaintiffs' data through the use of trackers on its Website, is rife with flaws. Among the most fatal is that the Privacy Policies disclosed the relevant conduct, and Plaintiffs admit they reviewed and accepted such Policies. These Policies, which are incorporated by reference in the Complaint, and Plaintiffs' continued use of the Website after discovering the alleged conduct, establish Plaintiffs' consent.

Additionally, various statutes of limitations bar the claims and Plaintiffs cannot escape this bar through their inadequate delayed discovery allegation. Moreover, given their fraud theory permeates their nine claims, Plaintiffs are subject to a heightened Rule 9(b) pleading standard they cannot meet. Also, while Plaintiffs rely on a medical information theory throughout the Complaint, two of the three Plaintiffs are recreational cannabis users in California where such use is lawful. The remaining Plaintiff, while allegedly a licensed cannabis patient, had a single Website interaction in which he only purchased a vape battery. These are commercial transactions that lack the sensitivity of medical information. Beyond the aforementioned flaws, there is no basis for punitive damages and there are independent problems with each of the nine claims (below).

Thus, STIIIZY respectfully urges the Court to dismiss the Complaint without leave to amend, or alternatively to strike portions of the Complaint, under Fed. R. Civ. P. 12 (including 12(b)(6) and 12(f)), 9(b) & 8(a).

## II. THE CORE ALLEGATIONS OF THE COMPLAINT

### A. STIIIZY's Alleged Use of Trackers to Collect and Share Data

Plaintiffs allege that STIIIZY sells cannabis and other products through the Website (Cmpl., ¶¶ 1, 5), installs trackers from Meta, Google, and Lotame on the Website (Cmpl., ¶¶ 7, 8, 51, 53), and allows these trackers to share user data – including the pages and products they view, the products they add to their carts, and the products they purchase online – with Meta, Google and Lotame (Cmpl., ¶¶ 8,

55). Plaintiffs further allege these trackers intercept communications in "real time" (Cmpl., ¶¶ 56, 194-95, 197) and Meta, Google and Lotame sell the data to others, who in turn use it for their own commercial purposes (Cmpl., ¶¶ 9, 67, 72-74).

**B. The Privacy Policy Disclosures**

Plaintiffs allege they did not consent to the collection and sharing of their data because the Privacy Policies supposedly are false and incomplete – despite containing specific disclosures that STIIIZY uses trackers and shares data with Google and others.

**1. The 2023 Privacy Policy**

The 2023 PP allegedly was effective from June 30, 2023 through May 19, 2025. Cmpl., ¶ 31 & Section Heading. The 2023 PP states that STIIIZY does not sell personal information but may use and share such information (Cmpl., ¶ 31); it states that STIIIZY ***tries*** to collect personal information only to the extent necessary (Cmpl., ¶ 31); it identifies sensitive personal information collected such as geolocation and health information (Cmpl., ¶ 32); it states that such information is shared with service providers and others (Cmpl., ¶ 32); and it discloses that Google is one of the various entities tracking customer data (Cmpl., ¶ 34).

**2. The 2025 Privacy Policy**

The 2025 PP has allegedly been effective since May 20, 2025. Cmpl., ¶ 35 & Section Heading. The 2025 PP states that third party advertising and social media companies use cookies and other technologies to collect data (Cmpl., ¶ 35); it states that STIIIZY uses AI to process personal information (Cmpl., ¶ 35); it discloses that Google is one of the various entities tracking customer data (Cmpl., ¶ 37); and it states that STIIIZY does not sell personal information (Cmpl., ¶ 39).

**C. The Alleged Falsity of the Privacy Policy Disclosures**

Plaintiffs allege that, by virtue of sharing data with Meta, Google and Lotame, STIIIZY's representations that (1) it would not sell personal information and (2) only entities performing services on behalf of STIIIZY would receive data, were

false. Cmpl., ¶¶ 39, 42, 158, 159. Plaintiffs further allege that, contrary to its Privacy Policy representation, STIIIZY collected and shared more personal information than necessary, "including persistent device identifiers, precise geolocation coordinates, real-time behavioral signals, and cannabis purchase details." Cmpl., ¶¶ 160, 41-42. Finally, Plaintiffs allege that, despite identifying Google by name and noting there were others too, the failure to identify Meta and Lotame ***by name*** rendered the Privacy Policies somehow false. Cmpl., ¶¶ 161, 40, 42.

**D. The Plaintiff-Specific Allegations**

**1. Plaintiff AG**

Plaintiff AG alleges that he has been using the Website since May or June 2024 and that he uses it to purchase cannabis products. Cmpl., ¶ 113. Plaintiff AG also alleges that Meta, Google, and unnamed others collected his data and that, after he started using the Website, he noticed an increase in cannabis ads in his Facebook account. Cmpl., ¶¶ 114-115. Plaintiff AG allegedly understood from this increase that his Website browsing had been shared with Meta. Cmpl., ¶ 115.

**2. Plaintiff BR**

Plaintiff BR alleges that she has been using the Website since "approximately 2023," and that she browses the Website to identify items, but purchases them in the store. Cmpl., ¶ 118. Plaintiff BR also alleges that Meta and Google collected her data and that, after she started using the Website, she noticed an increase in cannabis ads in her "social media platforms." Cmpl., ¶¶ 119-120. She allegedly understood from this increase that her Website browsing had been shared with "third-party advertisers." Cmpl., ¶ 120.

**3. Plaintiff RM**

Plaintiff RM alleges that he is a licensed cannabis patient and used the Website on a single occasion in June 2024 to purchase a "vape battery product." Cmpl., ¶ 123. Plaintiff RM also alleges that, after he used the Website, he noticed an increase in cannabis ads in his Facebook account. Cmpl., ¶ 124. He allegedly

understood from this increase that his single Website experience had been shared with Meta, Google and unnamed others. Cmpl., ¶ 125.

## III. DEFICIENCIES IN THE CORE ALLEGATIONS

### A. The Privacy Policies Are Even More Robust Than Portrayed

What the Complaint admits about the Privacy Policies is enough to establish consent. But the Privacy Policies, which are incorporated in the Complaint (which has ***links*** to them), are even more fulsome than what the Complaint suggests.

#### 1. The 2023 Privacy Policy's Additional Disclosures

The 2023 PP contains numerous clear and unambiguous representations that demonstrate that Plaintiffs consented to the conduct at issue.

The 2023 PP indicates STIIIZY will "collect, use, share and store personal information," including "identifiers, commercial information, internet or other electronic network activity information, sensitive personal information, biometric information, and inferences drawn from personal information." It further states that STIIIZY "do[es] not sell your personal information but may use and share" it.

The 2023 PP discloses that it collects "Identifiers" such as "[n]ame," "postal address," "email address," "phone number," "date of birth," "social security number," and "IP address." It also states that STIIIZY shares these identifiers with "[s]ervice providers … and contractors with whom we do business." These include "Google" and others. The 2023 PP discloses that the business purposes for such sharing include "[a]nalyzing our performance," "[p]erforming services on behalf of STIIIZY," and "[p]roviding advertising and marketing services for STIIIZY."

The 2023 PP indicates that it also collects "Commercial Information" and "Internet or Other Electronic Network Activity Information" (such as search histories and URLs). For these categories of data, the 2023 PP discloses that it shares with the same recipients of the Identifiers and for the same business purposes (and others). But the 2023 PP states that it does not limit STIIIZY's use or disclosure of non-personal information such as "aggregated and/or anonymized

information about our users and their use of the Websites."

Finally, the 2023 PP provides clear instructions on how to withdraw consent to the above practices and how to modify browser settings to prevent cookies from Google and other service providers.

### 2. The 2025 Privacy Policy's Additional Disclosures

The 2025 PP contains numerous clear and unambiguous representations that demonstrate that Plaintiffs consented to the conduct at issue.

The 2025 PP states that "[w]e collect personal information, including identifiers, geolocation data, commercial information, and sensitive personal data, to provide our services, improve user experience … and support marketing efforts. … We do not sell your personal information. However, we may share it with third parties for business purposes, such as service providers, analytics partners, and authorized vendors." The 2025 PP further clarifies that STIIIZY collects, uses, shares and stores such personal information, which consists of information that can be linked to "a particular individual or household." Such information includes "name," "postal address," "email address," "phone number," "date of birth," "social security number," "IP address," "products you have purchased through our Websites and at our retail store locations," "search history," and "Referrer URL."

The 2025 PP lists the numerous ways in which STIIIZY uses the personal information it collects, including targeted advertisements. With respect to the purpose of sharing such personal information, it states: "We may share your personal information with vendors, service providers, contractors and agents in connection with the performance of services on our behalf." The 2025 PP also discloses that "we may also sell, rent, or share aggregate consumer information (i.e., anonymized summary data) with others for their own uses. Specifically, we may sell, rent or share certain aggregate consumer information that we compile using personal information collected about you and other users. … We may sell, rent or share this aggregate consumer information with our partners and other companies

for their own marketing, product development, research, or other uses."

The 2025 PP provides clear instructions on how to withdraw consent to the above practices and how to modify browser settings to block cookies from Google and other service providers.

Finally, the 2025 PP advises customers that "[w]e, our service providers and the third parties we work with use artificial intelligence (AI) …, including generative AI, to facilitate the processing of personal information …." The 2025 PP also states that "[w]e work with third party advertising companies and social media companies that display ads on our Services and other online services. These companies use cookies and other technologies to collect data … on your activity over time across our Services and other online services …, which they use to try to tailor the ads you see online to your interests." And the 2025 PP advises how customers can opt out of this feature.

### 3. **The Disclosures are not "Buried" or "Vague"**

Plaintiffs allege there is no consent because the Privacy Policies "buried" the aforementioned "vague" disclosures. Cmpl., ¶ 45. A simple review of the Privacy Policies shows this allegation is untrue. The disclosures are easy to find and clear. Moreover, the buried/vague allegation is contradicted by Plaintiffs' own breach of express contract, breach of implied contract, intrusion, and publication claims. These claims explicitly state that Plaintiffs had knowledge of, understood, and relied upon the very representations that supposedly were hidden and vague. Cmpl., ¶¶ 155-156, 158-161, 170, 172, 215, 217, 227.

## B. **The 2019 Privacy Policy is Irrelevant**

Although the Complaint also relies on the 2019 PP, there is no allegation that Plaintiffs used the Website during the time in which the 2019 PP purportedly was operative. Plaintiff AG and Plaintiff RM started using the Website in 2024 after the 2023 PP allegedly took effect. And Plaintiff BR started using the Website at some time in 2023, but there is no allegation that Plaintiff BR used the Website before the

2023 PP allegedly took effect on June 30, 2023. Thus, the Complaint's allegations concerning this 2019 PP are irrelevant.

### C. Plaintiffs' Continued Website Use and Non-withdrawal of Consent

There is no allegation that either Plaintiff AG or Plaintiff BR ever stopped using the Website. Rather, they continued to use the Website after discovering the alleged conduct. There is also no allegation that any of the Plaintiffs withdrew consent to the data collection/sharing despite the Privacy Policies allowing for such withdrawal.

### D. Plaintiffs Have Not Alleged Medical Information is at Issue

Plaintiffs AG and BR do not allege that they are licensed cannabis patients. Rather, they are recreational users with no medical information at issue. They are also California residents and their use of cannabis is legal.

Although Plaintiff RM, who is also a California resident, allegedly is a licensed cannabis patient, his one Website visit was not for cannabis or any medical products. Rather, his single purchase was a "vape battery product." Vape batteries are used with vape pens, and vape pens are used with items such as nicotine and herbs by recreational users. There is nothing inherently medicinal about vape batteries.

Thus, the medical information allegations in the Complaint are irrelevant.

## IV. ARGUMENT

### A. Plaintiffs Consented to the Alleged Conduct

Because Plaintiffs consented to the alleged conduct through their review/acceptance of the Privacy Policies and their continued use of the Website after discovering the alleged conduct, their claims should be dismissed.

#### 1. Consent by Review/Acceptance of Privacy Policies

Plaintiffs admit they had knowledge of, understood and relied upon the Privacy Policies when they allege that these Policies (1) constitute a contract, (2) are the basis of their other claims, and (3) were the reason for their delayed discovery of

the alleged conduct. Cmpl., ¶¶ 132, 155-156, 158-161, 170, 172, 215, 217, 227.

Each of these Privacy Policies discloses the conduct at issue, including the use of trackers offered by Google and others, and the sharing of personal information with Google and others. These disclosures are detailed and unambiguous, and any reasonable person would understand them. *Smith v. Facebook, Inc.*, 745 F. App'x 8, 8-9 (9th Cir. 2018) (consent exists because reasonable person would understand data collection and advertising disclosures). Courts have found consent in other cases involving similar levels of detail as that found in the Privacy Policies here. *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1054-60 (N.D. Cal. 2025) (consent based on disclosure of cookies by entity's partners); *Sisti v. Bosley, Inc.*, 2026 WL 1223927, at *5-6 (C.D. Cal. Apr. 27, 2026) (consent based on disclosure of third party cookies that collect data and send ads).

**2. Consent by Continued Use After Discovery**

There is no allegation that either Plaintiff AG or BR ever stopped using the Website. In fact, they continued to use the Website after discovering the alleged conduct through increased cannabis ads on their social media platforms. That establishes consent. *In re Yahoo Mail Litig*, 7 F.Supp.3d 1016, 1030 (N.D. Cal. 2014) (continued use despite knowledge of interception equates to consent) (citation omitted).

Plus, these Privacy Policies provided a means to withdraw consent, but none of the Plaintiffs allege they took such action. That too demonstrates consent.

**B. The Relevant Statutes of Limitations Bar Many Claims Here**

Because the Complaint was filed on May 12, 2026 (Dkt. 1), and because Plaintiffs' delayed discovery allegation is inadequate (below), many of their claims are barred by statutes of limitations ("SOL") and should be dismissed.

**1. Plaintiff RM Cannot Bring his Two CIPA Claims**

Plaintiff RM alleges he used the Website on a single occasion in June 2024. Cmpl., ¶ 123. That is over one year before the Complaint was filed. Thus, Plaintiff

RM may not bring his Cal. Pen. Code §§ 631 & 632 claims because they are subject to a one-year SOL. Cal. Civ. Proc. Code § 340; *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1069 (N.D. Cal. 2021) (citation omitted).

Plaintiff RM tries to save these two CIPA claims by alleging delayed discovery in conclusory fashion in a single short paragraph. Cmpl., ¶ 132. But California law requires him to plead facts to show the ***time*** of discovery. *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005) (conclusory allegations insufficient). Because Plaintiff RM fails to allege ***when*** he discovered the alleged misconduct, he cannot escape the SOL. Indeed, if discovery occurred after his single June 2024 Website visit but before May 12, 2025, that would be outside the permissible one-year period.

**2. <u>Plaintiffs AG and BR Cannot Bring Various Claims</u>**

Plaintiff AG alleges he has been using the Website since May or June 2024. Cmpl., ¶ 113. If he started between May 1-11, 2024, that is over 2 years before the Complaint was filed. Plaintiff BR alleges that she has been using the Website since "approximately 2023." Cmpl., ¶ 118. That is also over 2 years before the Complaint was filed. Thus, Plaintiffs AG and BR may not bring their Cal. Pen. Code §§ 631, 632 claims because those claims are governed by a one-year SOL. *See* Section IV.B.1 *supra*. And Plaintiffs AG and BR may not bring their breach of confidence, breach of implied contract, unjust enrichment, and ECPA claims because those claims are governed by a two-year SOL. Cal. Civ. Proc. Code § 339(1); 18 U.S.C. § 2520(e); *NBCUniversal Media, LLC v. Superior Ct.*, 225 Cal. App. 4th 1222, 1230 (2014); *Brown*, 525 F. Supp. 3d at 1069.

Plaintiffs AG and BR try to save these six claims by alleging delayed discovery in conclusory fashion in a single short paragraph. Cmpl., ¶ 132. But California law requires them to plead facts to show the ***time*** of discovery. *Fox*, 35 Cal. 4th at 808. Because Plaintiffs AG and BR fail to allege ***when*** they discovered the alleged misconduct, they cannot escape the SOLs. Indeed, if Plaintiff AG's

discovery was between May 1-11, 2024, and if Plaintiff BR's discovery was between 2023 and May 11, 2024, that would be outside the applicable one-year and two-year periods.

Plaintiffs AG and BR cannot allege delayed discovery for another reason. California law requires them to plead their inability to discover the purported misconduct despite reasonable diligence. *Fox*, 35 Cal. 4th at 808. Given their continued use of the Website following discovery of the alleged conduct, and their failure to withdraw consent under the Privacy Policies, Plaintiffs AG and BR cannot plausibly allege an inability to discover the supposed misconduct despite reasonable diligence. *Id*.

**3. <u>Plaintiffs Cannot Rely on Fraud-Based Delayed Discovery</u>**

Plaintiffs' delayed discovery argument rests on a fraudulent concealment theory. Cmpl., ¶ 132. The very same purported falsity and supposed misleading nature of the Privacy Policies permeates each of the nine causes of action because Plaintiffs allege that each Privacy Policy representation is "false" and "misleading" (Cmpl., ¶¶ 42, 93) and that STIIIZY used these false and misleading representations to "conceal" its conduct (Cmpl., ¶¶ 198, 217, 227). The fraudulent concealment supporting the delayed discovery allegation is therefore part of the conduct on which Plaintiffs base their substantive claims. But fraudulent concealment requires conduct "above and beyond the wrongdoing upon which the plaintiff's claim is filed . . .." *De Los Reyes v. Ruchman & Assocs., Inc.*, 2014 WL 4354238, at *5 (N.D. Cal. Sept. 2, 2014) (citation omitted). Thus, Plaintiffs may not invoke delayed discovery based on their fraudulent concealment theory to avoid the SOLs given the same purported fraud is part of their substantive claims. *Id.*

**C. <u>Plaintiffs Fail to Plead With Particularity and Plausibility</u>**

The nine claims at issue sound in fraud. *See* Section IV.B.3 *supra*. Under Fed. R. Civ. Pro. 9(b), such claims must be plead with particularity. That means pleading facts concerning the ***who, what, when, where, and how*** of the purported

misconduct. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003), superseded by statute on other grounds as recognized in *In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 2025 WL 2684021, at *34 (C.D. Cal. Aug. 15, 2025). It also means pleading facts concerning what is false or misleading about a statement, and ***why*** it is false or misleading. *Vess*, 317 F.3d at 1106.

Independent of these fraud pleading requirements, under Fed. R. Civ. Pro 8(a), Plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557 (internal citation omitted). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (internal citation omitted). "When faced with ***two possible explanations***, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are 'merely consistent with' their favored explanation but are also consistent with the alternative explanation." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678) (emphasis added). "Something more is needed, such as facts tending to ***exclude*** the possibility that the ***alternative*** explanation is true . . . in order to render plaintiffs' allegations plausible within the meaning of *Iqbal* and *Twombly*." *Id.* (internal citations omitted; emphasis added).

Plaintiffs identified four supposedly fraudulent misrepresentations in the Privacy Policies, but these allegations are neither plausible nor based on particularized facts.

Plaintiffs allege that, by virtue of sharing data with Meta, Google and Lotame, STIIIZY's representations that (1) it would not ***sell*** data and (2) only entities

performing ***services*** on behalf of STIIIZY would receive data, were false. Cmpl., ¶¶ 39, 42, 158-159. There are several reasons why these allegations fail.

First, Lotame is irrelevant because there are no allegations that Lotame collected Plaintiffs' data – the plaintiff-specific allegations are limited to Google and Meta. Cmpl., ¶¶ 112-125.

Second, there are also no plausible allegations or particularized facts that explain how or why the "no sale" representation could be false based on STIIIZY's alleged sharing of data given the numerous statements in the Privacy Policies advising consumers of the sharing of data; distinguishing between the sharing of data and the sale of data; stating that STIIIZY would receive valuable services from service providers with whom it also shared data; and stating that certain information might actually be sold. *See* Sections III.A.1-2 *supra*.

Third, there are no plausible allegations or particularized facts that explain how or why Google and Meta (and Lotame) do not qualify as STIIIZY service providers with whom it shares data (as disclosed in the Privacy Policies); that explain whether these entities provided STIIIZY with services; or that explain how or why a data broker – as the Complaint labels these entities – cannot also be a service provider under the terms of the Privacy Policies.

Plaintiffs also allege that STIIIZY's ***representation*** that it tried to only collect and share personal information as ***needed*** was false because of the collection and sharing of "persistent device identifiers, precise geolocation coordinates, real-time behavioral signals, and cannabis purchase details." Cmpl., ¶¶ 160, 41-42. There are no plausible allegations or particularized facts that explain whether STIIIZY tried, or how or why the collection and sharing of these specific items supposedly was unnecessary, especially given the specific Privacy Policy statements concerning the purposes of such data collection and sharing. *See* Sections III.A.1-2 *supra*.

Finally, Plaintiffs allege the failure to name Meta (and Lotame) rendered the Privacy Policies false. Cmpl., ¶¶ 161, 40, 42. There are no plausible allegations or

particularized facts that show the Privacy Policies promised to identify every service provider by name. And there are no plausible allegations or particularized facts that explain how or why omitting the names of Meta (and Lotame) is material given the depth of disclosures in the Privacy Policies concerning trackers, data sharing, and the various service providers. *See* Sections III.A.1-2 *supra*.

Given these pleading failures, which permeate all the claims, Plaintiffs' claims should be dismissed.

**D. <u>There Are Additional Flaws in Each Claim</u>**

Additional pleading flaws in each claim constitute separate and independent grounds on which the Court should dismiss the Complaint.

**1. <u>Breach of Confidence</u>**

This tort requires that: (1) plaintiff conveyed confidential and novel information; (2) defendant had knowledge the information was disclosed in confidence; (3) there was a mutual understanding that confidence be maintained; and (4) there was a disclosure in violation of that understanding. *Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1227 (9th Cir. 1997). Plaintiffs fail to plausibly allege these elements.

***No confidential relationship***: There are no plausible allegations of a relationship akin to a physician-patient relationship given the commercial relationship between a retail cannabis website owner and both (1) recreational cannabis users and (2) a cannabis patient who purchases a recreational vape battery. No medical information is at issue. *See* Section III.D *supra*. Thus, Plaintiffs have not plausibly alleged they are vulnerable in the same way as medical patients are. *QuickLogic Corp. v. Konda Techs., Inc.*, 618 F. Supp. 3d 873, 887 (N.D. Cal. 2022) (vulnerability required but does not exist in arm's-length transaction). Nor have Plaintiffs plausibly alleged they provided any information "in confidence" given this was an ordinary commercial transaction and the Privacy Policies disclosed the trackers and the sharing of personal information. *See* Sections III.A.1-2 *supra*.

***No novel information***: Plaintiffs have not plausibly alleged the recreational cannabis and vape battery information is "novel" given the commercial and recreational nature of it. *Ent. Rsch. Grp., Inc.*, 122 F.3d at 1227 (novelty required).

***No knowledge or mutual understanding***: The Privacy Policies' disclosures of the trackers and the sharing of personal information (*see* Sections III.A.1-2 *supra*) prevent Plaintiffs from plausibly alleging that STIIIZY knew their information was disclosed in confidence or that there was a mutual understanding that confidence be maintained. *Ent. Rsch. Grp., Inc.*, 122 F.3d at 1227 (knowledge and mutual understanding required).

***No such claim if written contract exists***: If the Privacy Policies are a written contract, as Plaintiffs allege in their breach of express contract claim, there is no breach of confidence claim. *QuickLogic Corp.*, 618 F. Supp. 3d at 886 n.7 (implied obligation rather than express contract forms basis of this tort).

**2. <u>Breach of Express Contract</u>**

***No contract***: Plaintiffs cannot plausibly allege the Privacy Policies are contracts. Rather, they are informational documents explaining (1) STIIIZY's collection and sharing of personal information; (2) how to withdraw consent; and (3) how to adjust settings to prevent the collection and sharing. Plaintiffs thus have not plausibly alleged a mutual exchange of promises. *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 610-11 (9th Cir. 2020) (Facebook's Data Use Policy is merely informational); *In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1160 (N.D. Cal. 2021) (similar); *Wiley v. Universal Music Grp., Inc.*, 826 F. Supp. 3d 1121, 1139 (N.D. Cal. 2025) (similar).

***No actionable statements***: The statements in the Privacy Policies on which the purported breaches are based (no sale; share only with service providers; collect only necessary data) are not actionable. *Fudge v. Delta Air Lines, Inc.*, 753 F. Supp. 3d 987, 996 (C.D. Cal. 2024) ("no sale" statement not actionable); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1095 (N.D. Cal. 2022) (statement about

collection and sharing not actionable).

***No breach***: Plaintiffs cannot plausibly allege a breach of the Privacy Policies:

"No Sale": Plaintiffs allege the sharing of data is a sale, but the Privacy Policies (1) allow for sharing, (2) distinguish a "sale" from the sharing of data with service providers who provide valuable services, and (3) allow for certain sales. *See* Sections III.A.1-2 *supra*.

"Only Service Providers": Plaintiffs allege that sharing data with Google, Meta, and Lotame violates this representation, but they cannot plausibly allege that Google, Meta and Lotame are not service providers who provided services to STIIIZY. Labeling these entities as data brokers is conclusory and does not mean they are not also service providers under the terms of the Privacy Policies. *See* Sections III.A.1-2 *supra*. Also, Lotame is irrelevant because there are no allegations that it obtained ***Plaintiffs'*** data. Cmpl., ¶¶ 112-125.

"Only necessary data": Plaintiffs allege that certain items were unnecessarily collected, but they cannot plausibly allege that STIIIZY did not try to limit its collection to necessary items or that the aforementioned items were unnecessary, especially given the specific Privacy Policy statements concerning the purposes of such data collection and sharing. *See* Sections III.A.1-2 *supra*.

***No damages***: The diminution in value theory is speculative because Plaintiffs have not plausibly alleged that they attempted to monetize the data, that they were foreclosed from doing so, or that they suffered any concrete economic loss from the data sharing. *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1028-29 (N.D. Cal. 2012) (rejecting diminution in value theory of damages).

***No medical information***: To the extent this claim is based on medical information, it should be dismissed because Plaintiffs have not plausibly alleged any medical information is at issue. *See* Section III.D *supra*.

**3. Breach of Implied Contract**

***No contract***: *See* Section IV.D.2 *supra*.

***No actionable statements***: *See* Section IV.D.2 *supra*.

***No breach***: *See* Section IV.D.2 *supra*.

***No damages***: *See* Section IV.D.2 *supra*.

***No medical information***: *See* Section IV.D.2 *supra.*

***No such claim if written contract exists***: If the Privacy Policies are a written contract, as Plaintiffs allege in their breach of express contract claim, there is no breach of implied contract claim. *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 848 (N.D. Cal. 2024) (no implied contract where express contract covers same subject matter); Cal. Civ. Code § 1621 (implied contract based on conduct).

**4. <u>Unjust Enrichment</u>**

***No standalone claim***: Most courts do not recognize a standalone claim for unjust enrichment. *Knuttel v. Omaze, Inc.*, 2022 WL 1843138, at *13 (C.D. Cal. Feb. 22, 2022); *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 119 (N.D. Cal. 2020).

***No such claim if written contract exists***: While a minority of courts recognize an unjust enrichment claim, they characterize it as quasi-contract. *Id*. But if the Privacy Policies are a written contract, as Plaintiffs allege in their breach of express contract claim, there is no quasi contract claim. *Zepeda v. PayPal, Inc.*, 777 F. Supp. 2d 1215, 1223 (N.D. Cal. 2011) (no quasi contract where express contract covers same subject matter).

***No unjust enrichment***: Plaintiffs have not plausibly alleged the unjust retention of benefits given the Privacy Policies disclose the trackers, the sharing of data, and the receipt of valuable services. *See* Sections III.A.1-2 *supra*; *Markels v. AARP*, 689 F. Supp. 3d 722, 731 (N.D. Cal. 2023) (dismissing unjust enrichment claim where privacy policy disclosed information sharing for advertising).

***No medical information***: *See* Section IV.D.2 *supra.*

**5. <u>CIPA § 631</u>**

The relevant elements of this claim are that defendant intercepts a communication without consent and while that communication is in transit. Cal.

Pen. Code § 631(a). Plaintiffs failed to plausibly allege these elements.

***Consent***: A CIPA claim requires the absence of consent. Cal. Pen. Code §§ 631(a), 632(a). But Plaintiffs cannot plausibly allege they did not consent given their review/acceptance of the Privacy Policies and their continued use of the Website after discovering the alleged conduct. *See* Sections III.A.1-2 & IV.A.1-2 *supra*.

***The party exception***: To the extent Plaintiffs allege STIIIZY intercepted communications between Plaintiffs and STIIIZY, as opposed to alleging STIIIZY aided the tracker providers in doing so, the claim should be dismissed because a party cannot intercept its own communications. *In re Facebook, Inc.*, 956 F.3d at 607; *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1113 n.5 (S.D. Cal. 2024).

***Not in transit***: In spite of certain conclusory allegations that the interception occurred "in transit," Plaintiffs have not plausibly alleged as much. The "in transit" requirement applies ***both*** to the ***read/learn*** and the ***use*** allegations in the Complaint: "Any person … who willfully and without the consent of all parties to the communication … reads, or attempts to read, or to learn the contents … of any … communication while the same is ***in transit*** …; or who uses, or attempts to use … any information ***so obtained***, is punishable …." Cal. Pen. Code § 631(a) (emphasis added). Plaintiffs offer no plausible allegations that there was an attempt to read or learn the contents of communications from Plaintiffs to STIIIZY ***before*** STIIIZY had received the communications. Nor are there any plausible allegations that the data that was allegedly used had been read or learned ***before*** STIIIZY had received the communications.

There is no attempt to plausibly explain whether the tracker technologies allow one to read/learn the contents ***before*** STIIIZY actually receives the communication. It may be that any reading/learning occurred only ***after*** STIIIZY had received the communication, which would not violate this statute. Cal. Pen. Code § 631(a). Plaintiffs have not plausibly alleged that this possibility did not

occur, and this failure violates Rule 8(a). *See* Section IV.C *supra; Heiting v. Taro Pharms. USA, Inc.*, 728 F. Supp. 3d 1112, 1126 (C.D. Cal. 2024) (dismissing complaint given failure to plausibly allege interception in transit).

In fact, in a case involving Meta, a court ruled that Meta's data processing did not satisfy the "in transit" requirement because the filtering and processing of data occurs ***after*** the communication already traveled from the website visitor to the website operator. *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1117 (N.D. Cal. 2025) (granting summary judgment for defendant). Thus, it is doubtful that Plaintiffs can plausibly allege this "in transit" element.

***No medical information***: *See* Section IV.D.2 *supra.*

**6. <u>CIPA § 632</u>**

The relevant elements of this claim are that defendant eavesdrops or records a confidential communication without consent, and plaintiff is unaware that defendant is overhearing or recording. Cal. Pen. Code §§ 632(a)-(c). Plaintiffs failed to plausibly allege these elements.

***Consent***: *See* Section IV.D.5 *supra*.

***Knowledge***: Given that Plaintiffs knew of the trackers and data sharing through the Privacy Policies, Plaintiffs cannot plausibly allege that STIIIZY qualifies as a "person" subject to this statute. Cal. Pen. Code § 632(b) ("excludes an individual known by all parties to a confidential communication to be overhearing or recording the communication").

***The party exception***: To the extent Plaintiffs allege that STIIIZY ***eavesdropped*** on communications between Plaintiffs and STIIIZY, as opposed to alleging that STIIIZY ***recorded*** such communications, the claim should be dismissed because a party cannot eavesdrop on its own communications. *Thomasson v. GC Servs. Ltd. P'ship*, 321 F. App'x 557, 559 (9th Cir. 2008); *Turner v. Nuance Commc'ns, Inc.*, 735 F. Supp. 3d 1169, 1182 (N.D. Cal. 2024).

***No confidential communication***: The statute applies only to confidential

communications, which are those "carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto …." Cal. Pen. Code § 632(c). Excluded are "communication[s] made … in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded." *Id*. Plaintiffs cannot plausibly allege a confidential communication given their review/acceptance of the Privacy Policies and their continued use of the Website after discovering the alleged conduct. *See* Sections III.A.1-2 & IV.A.1-2 *supra*.

Moreover, internet communications like those here are presumptively not confidential. *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) (consumer website); *Campbell v. Facebook, Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) (Facebook messages); *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 746-47 (N.D. Cal. 2023) (online customer service chats). Commercial transactions on a public website by recreational cannabis users and vape battery purchasers are not confidential.

***No recording***: In spite of certain conclusory allegations of a "recording," Plaintiffs have not plausibly alleged as much. Plaintiffs offer no plausible allegations that the trackers recorded the communications as opposed to simply transmitting the communications to others. It may be that no recording took place. Plaintiffs have not plausibly alleged that this possibility did not occur, and this failure violates Rule 8(a). *See* Section IV.C *supra*.

***No medical information***: *See* Section IV.D.2 *supra*.

**7. <u>Intrusion</u>**

An intrusion claim requires that defendant intentionally intrude into a matter as to which plaintiff has a reasonable expectation of privacy, and the intrusion occurred in a manner highly offensive to a reasonable person. *In re Facebook, Inc.*, 956 F.3d at 601. Plaintiff RM, the only plaintiff to bring this claim, failed to plausibly allege these elements.

***No reasonable expectation of privacy***: There is no reasonable expectation of privacy on a defendant's own public website offering commercial products. *Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 846 (S.D. Cal. 2024) (dismissing intrusion claim where no reasonable expectation of privacy in browsing data collected from defendant's own website). This is particularly true given the Privacy Policies disclose the relevant conduct and Plaintiff RM consented. *See* Sections III.A.1-2 & IV.A.1-2 *supra.* And this conclusion is further buttressed by the fact that internet communications such as the ones here are presumptively not confidential. *See* Section IV.D.6 *supra.* That no medical information is involved further supports this conclusion. *See* Section III.D *supra.*

***No highly offensive conduct***: There is no highly offensive conduct where, as here, a privacy policy discloses the data collection, and there are no promises to refrain from collecting such data. *Hammerling*, 615 F. Supp. 3d at 1090 (distinguishing cases involving broken promises). Courts have found that even the collection of browser history, unique device identification numbers, personal data, and Social Security numbers are not "highly offensive," but instead is routine commercial behavior. *Id.* at 1090; *Low*, 900 F. Supp. 2d at 1025. This conclusion is further buttressed by the fact that internet communications such as the ones here are presumptively not confidential. *See* Section IV.D.6 *supra.* That no medical information is involved further supports this conclusion. *See* Section III.D *supra.*

**8. <u>Publication of Private Facts</u>**

This tort requires (1) a public disclosure (2) of a private fact (3) which would be offensive and objectionable to a reasonable person and (4) which is not of legitimate public concern. *Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 214 (1998). Plaintiff RM, the only plaintiff to bring this claim, failed to plausibly allege these elements.

***No private facts***: For the same reasons there is no confidential relationship, no confidential communication, and no reasonable expectation of privacy, there are no

private facts whose publication would be offensive to a reasonable person. *See* Sections IV.D.1,6,7 *supra*.

***No publication***: Plaintiff RM identifies only a limited number of third-party service providers whose trackers were installed on the Website and with whom the data allegedly was shared. Disclosure to a small, defined group of commercial entities does not satisfy the publication requirement. *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1089-90 (W.D. Wash. 2024) (disclosure to only Facebook and Google does not constitute publication).

**9. <u>ECPA</u>**

The relevant elements of this claim are that defendant intercepts a communication without consent and while in transit, or discloses or uses the contents knowing the communication had been intercepted while in transit. 18 U.S.C. §§ 2511(1)(a), (c), (d) & 2510(1), (4), (12) & 2511(2)(d). Plaintiffs failed to plausibly allege these elements.

***Consent***: ECPA differs from CIPA in that only one party to the communication need consent. 18 U.S.C. § 2511(2)(d) ("It shall not be unlawful … for a person … to intercept a … communication … where one of the parties to the communication has given prior consent …."). Here, both sides consented. Plaintiffs cannot plausibly allege they did not consent given their review/acceptance of the Privacy Policies and their continued use of the Website after discovering the alleged conduct. *See* Sections III.A.1-2 & IV.A.1-2 *supra*. And STIIIZY consented, as evidenced by the Privacy Policies. STIIIZY's consent alone is enough.

***The party exception***: To the extent Plaintiffs allege that STIIIZY intercepted communications between Plaintiffs and STIIIZY, as opposed to alleging that STIIIZY aided the tracker providers in doing so, the claim should be dismissed because a party cannot intercept its own communications. 18 U.S.C. § 2511(2)(d); *In re Facebook, Inc.*, 956 F.3d at 607.

***No crime-tort exception***: ECPA states that a defendant remains liable even if

the defendant was a party to the communication where "such communication is intercepted for the purpose of committing any criminal or tortious act …." 18 U.S.C. § 2511(2)(d). Although Plaintiffs allege as much (Cmpl., ¶¶ 244-245), these allegations are conclusory and contradicted by Plaintiffs' numerous other allegations that STIIIZY engaged in this conduct for money. Cmpl., ¶¶ 9, 79, 130, 178, 180, 200, 212, 241, 250. Thus, Plaintiffs cannot plausibly allege the crime-tort exception. *Doe v. Talkiatry Mgmt. Servs., LLC*, 816 F. Supp. 3d 1206, 1210 (C.D. Cal. 2026) (plaintiff failed to plausibly allege the crime-tort exception given defendant installed tracker for advertising and not primarily to injure consumers); *Rodriguez v. Google LLC*, 2021 WL 2026726, *6 n.8 (N.D. Cal. May 21, 2021) (similar); *Lakes*, 777 F. Supp. 3d at 1057-58 (similar).

***Not in transit***: *See* Section IV.D.5 *supra.*

***No medical information***: *See* Section IV.D.2 *supra.*

**E. <u>Punitive Damages</u>**

Plaintiffs have failed to plead fraud. *See, e.g.,* Section IV.C & IV.D.2 supra. Consequently, there is no basis for their punitive damages claim.

## V. <u>CONCLUSION</u>

For the reasons above, STIIIZY respectfully urges the Court to dismiss the Complaint without leave to amend, or alternatively to strike portions of the Complaint, under Fed. R. Civ. P. 12 (including 12(b)(6) and 12(f)), 9(b) & 8(a).

Even if this lawsuit were to proceed, which it should not, the Complaint reveals insurmountable obstacles to class certification. Among other things, there are individualized issues that would defeat class certification. For example: Which purported class members purchased for medicinal purposes rather than recreational use? Subjective intent (not just Website purchases) is relevant to this question. Which purported members purportedly withdrew consent under the Privacy Policies? When? What were the device/browser settings for each purported member? Did these change over time? Which purported members were logged into

Facebook and/or Google? When? Which data was taken from each purported member and what type of purported injuries does each have? What individualized facts support their claims for emotional distress? The list goes on. However, given the pleading flaws above, there is no need to wait until class certification to dispose of this lawsuit.

.DATED: August 3, 2026

Ekwan E. Rhow
Marc E. Masters
Monique M. Candiff
Bird, Marella, Rhow,
Lincenberg, Drooks & Nessim, LLP

By: *\/s/ Marc E. Masters*
Marc E. Masters
Attorneys for Defendant STIIIZY Inc.

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants certifies that this brief contains 6,995 words, which:

☒ complies with the word limit of L.R. 11-6.1.

☐ complies with the word limit set by court order dated ____________.

DATED: August 3, 2026

*/s/ Marc E. Masters*
Marc E. Masters